IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JEREMY DEFOUR,

    Plaintiff,

v.

Case No. 1:21-CV-274-CMH/IDD

RALPH NORTHAM, HAROLD CLARKE, JAMES PARKS, BRIAN MORAN, sued in their individual and official capacities,

    Defendants.

## COMPLAINT WITH JURY DEMAND

This is a Civil Rights action filed by Jeremy DeFour, pro se, a State inmate, for damages and injunctive relief under 42 USC 1983 alleging violation of his Eighth Amendment Rights due to deliberate indifference to safety and health and unsafe conditions.

1. The Plaintiff, Jeremy DeFour, was incarcerated at Buckingham Correctional Center during events described in this complaint, BOX 430, Dillwyn, VA 23936

2. The Defendant Ralph Northam is the Governor of Virginia, Patrick Henry Building, 3RD Floor, 1111 East Broad Street, Richmond, VA 23219

3. The Defendant Brian Moran is the Secretary of Public Safety, P.O. Box 1475, Richmond, VA 23218

4. The Defendant Harold Clarke is the Director of Virginia Department of Corrections, 6900 Atmore Dr, Richmond, VA 23225

5. The Defendant James Parks is the Director of Offender Management of the Virginia Department of Corrections, 6900 Atmore Drive, Richmond, VA 23225

6. On 12/17/20 while housed on Buckingham Correctional Center (BKCC), a Virginia Department of Corrections (VADOC) facility, an offender in my housing unit was found to be positive for COVID 19. After his positive result he was moved to the medical unit.

7. However, his cell partner, and several of his close associates he came in contact with, whom he exposed to the virus, was allowed to remain in the housing unit amongst approximately 60 other inmates, myself included.

8. None of those directly contacted by this positive case was provided a place to quarantine, but instead was left in the housing unit with several dozen other offenders for several days.

9. On 12/22/20 approximately 30 of the 60 offenders in my housing unit tested negative and was removed. I tested negative and remained in the housing unit. However, the inmates that were directly exposed to the 30 positive cases including several offenders that shared cells with positive cases were left in the housing unit with me. Therefore, approximately 20 offenders who were in direct contact for several days (sharing cells) with positive cases were left to share close quarters including, fountains, showers, phones, and allowed to feed meals to

me and other offenders who were not directly exposed. None of us was allowed to quarantine and none of the exposed cases wer allowed to quarantine many with out masks, cleaning materials, and no sanitation measures being employed to keep us safe.

10. On 12/29/20 I was found to be positive for COVID 19 after this exposure. So on 12/22/20 I was negative. I was then exposed to others who came in direct contact with positive cases (with no quarantine measures taken for my self or those who exposed me). This exposure took place for several days. I the tested positive after this exposure.

11. During the time of exposure I was forced to share the same shower with others exposed, forced to drink from the same fountain, and served my meals by offenders that were exposed and not wearing any mask. No cleaning or disinfectant measures were taken after each use of water fountain or shower.

12. Due to the unsafe conditions and disregard for my safety and health I contracted COVID 19 along with all of the other 30 offenders remaining in my housing unit.

13. As a result I suffered severe physical pain, sickness, and injury to my organs including lungs, liver, kidneys, intestines, (well known effects of COVID 19), as well as suffering mental distress and torment.

14. I contracted COVID as a direct result of the widespread policy and practices of VADOC Staff, under the supervision of the Director Harold Clarke, failure to follow Virginia Department of Health (VDH) and the Center for Disease Control (CDC) Safety, Sanitation, and Quarantine protocol causing an unsafe environment and deliberate indifference to my health.

15. This contraction of COVID and injury therefrom, along with the current threat to my health and safety is also a result of the Governor's failure to direct VADOC to reduce their population and overcrowding problem which enhances the risk of the virus spreading and injuring inmates. On 2/3/21 and other occasions, this problem has been brought to Harold Clarke, James Parkes, Brian Moran, and Governor Northam's attention by letter complaint and even by lawsuit see Brooke Whorley, et al v. Ralph S Northam, et al, Civil No 3:20 cv 255 -(HEH)(DJN)

16. However, no adequate measures have been taken to address this wide spread and prevelant problem of overcrowding in VADOC and the danger it poses. VADOC continues to disregard the health and safety of it's inmates like myself.

17. Compared to other States, Virginia has done next to nothing to reduce the prison population to help slow the spread of COVID. The small measures that were taken were by the State Legislature under Code of Virginia 44-146.16 et seq which imposed criteria that was so stringent that barely any of VADOC's 30,000 plus prisoners were eligible for early release.

18. To date only 966 prisoners have been released due to COVID (all already scheduled for release under 12 months) equating to a mere 3.2% percent of VADOC's prison population. This pales in comparrison to States such as New Jersey which has 12,000 less prisoners and released over 4,000 more prisoners than VADOC due to COVID. see NJ Rule 3:21-10(b)2 NJ Supreme Court and In the Matter of the Request to Modify Prison Sentences, Expedite Parole Hearings, and Identify Vulnerable Prisoners, Supreme Court of NJ, (M-1093-19)(084412). New Jersey's effort to slow the spread of COVID represents an almost 35% reduction of it's prison population prior to COVID. VADOC's efforts equates to inadequate at best, and therefore should be characterized as being no effort.

19. New Jersey's efforts utilized parole sentence reductions, pardons etc. However, in Virginia Prisoners who fall well within the criteria for Parole are constantly denied, no parole decisions are expedited and no special considerations are being made in an effort to reduce the prison population due to COVID.

20. Neither is Virginia Governor utilizing his Commutation or Pardon Power to reduce the prison population due to COVID. Several Pardon Petitions remain in his office without any expedience being employed due to COVID. My Pardon in particular has been in the Governor's Office since 2018. For the past 18 years I have been incarcerated under an excessive sentence of 37 years for a robbery of a Rent Way Store in 2003 where no one was hurt, only the store money was taken, and this was the only crime of this sort I ever committed. This crime was to steal money however, several murderers have come and gone during my 18 years of incarceration.

21. I have tremendous community support, completed several therapeutic courses, gained trades, higher education, maintained employment, I currently

am enrolled in Blackstone Career Institute Paralegal Course, and I have even created my own Rehabilitative Program to help offenders make positive choices. Furthermore, the Pandemic calls for the reduction of the prison population.

22. Nevertheless, myself and others who have done extensive amounts of time and bettered ourselves in extraordinary ways are not being considered for Pandemic Relief.

23. Instead, those like myself who are ready to be a productive member of society are entrapped in unsafe, dangerous environments where our health, safety, and our life is at risk even though myself and several others like me who are rehabilitated and have paid a tremendous debt for our crimes (18 years) meat the criteria for a Conditional Pardon or in certain cases Parole.

24. Therefore, since there are measures that can be taken that can prevent the risk the Defendants are aware of these measures and failed to implement them these defendants are subjecting me to unnecessary risk of serious harm due to the conditions I am forced to remain under and they are exhibiting

deliberate indifference to my safety and health. Harold Clarke and James Parks are excercising unsafe practices and policies within the VADOC that led to my contraction of COVID and poses a risk to my safety currently, and these policies and practices are conducted under the direct order and supervison of the Governor and Public Safety Director who are well aware of the risk of harm due to unsafe conditions within VADOC and the unsafe practices within VADOC.

25. Furthermore, the Governor has failed to excercise his authority to mitigate those risks and continues to fail to excercise his authority by granting my Pardon and others like me who have shown extraordinary progress and served extensive sentences and are at risk for COVID and have already been injured by COVID.

26. Furthermore, I have underlying health conditions that make me succeptable to complications from COVID including Lower Bowel Disease, and Gastrointestinal issues that compromises my immune system.

27. Due to the Defendant's awareness that VDH and CDC standards of sanitation, social distancing, and quarantine are virtually impossible to comply with due to prison overcrowding, the Defendant's failure to use all reasonable tools (including Parole, Pardon, House Arrest, Probation, etc.) to reduce the spread of COVID, the Defendants showed deliberate indifference to my safety and subjected me to the serious risk of harm due to their inadequate measures to protect resulting in my actual injury and they continue to expose me and other inmates to the extreme risk of serious harm in violation of my Eighth Amendment Right to be free from cruel and unusual punishment.

28. Wherefore, plaintiff requests that the Court grant the following relief

A. Issue a declatory judgment stating that the Defendants failure to expediently consider my request for pardon — and others similarly situated — violated my rights under the Eighth Amendment (and others) and subjecting me to unsafe conditions violated my Eighth Amendment Rights.

B. Issue an injunction ordering the Defendants to use every measure within their Authority, including but not limited to expediting Parole hearings and reviews, using the Power of Pardon and Commutation, implementing a policy, to consider all inmates for early release and not just a narrow class that would make no significant impact on the overcrowding in prison, in efforts to create a safer condition of confinement due to COVID 19.

Also issue an injunction ordering the Governor to consider Plaintiff's Pardon in an expedited manor along with others awaiting review of Pardon Petitions and issue Pardon if he finds, in his discretion, that Plaintiff's Pardon has merit and that he has served sufficient time and met sufficient rehabilitative goals.

C. Award Compensatory damages in the amount of $250,000 for the injury sustained due to COVID from each defendant jointly.

D. Award Punitive Damages in the following amount:

$20,000 each against Harold Clarke, and James Parks.

E. Grant any relief as it may seem that Plaintiff is entitled to.

Date:

Respectfully Submitted,

Jeremy DeFour, Pro Se